IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JEREMY ALFONZIE JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 111-102 |
| ) | (Formerly CR 109-171) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Jeremy Alfonzie Jones, an inmate currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's 28 U.S.C. § 2255 motion. (Doc. no. 3.) Petitioner opposes the motion. (Doc. no. 5.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 3), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

### I. BACKGROUND

In a 16-count superseding indictment filed on November 3, 2009, Petitioner was charged with various federal crimes, including receipt and sale of stolen property, mail fraud, introducing a misbranded drug into interstate commerce, and introducing an adulterated drug into interstate commerce. United States v. Jones, CR 109-171, doc. no. 15 (S.D. Ga. Nov. 3, 2009) (hereinafter "CR 109-171"). The Court appointed Gary A. Glover, Esq., to

represent Petitioner. Id., doc. no. 28. Pursuant to a written plea agreement, Petitioner pleaded guilty to Count One of the superseding indictment, which charged that he received and sold stolen property consisting of a significant quantity of Alli® weight loss capsules valued at $5,000.00 or more, in violation of 18 U.S.C. § 2315.[1] Id., doc. nos. 35, 36. Petitioner's plea agreement contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]he defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id., doc. no. 35, pp. 7-8.

At the Rule 11 hearing held on March 5, 2010, the Honorable J. Randal Hall, United States District Judge, summarized the terms of the plea agreement and explained to Petitioner that he was "waiving the right to appeal either directly or indirectly [his] conviction and sentence including any right to attack that sentence in a post-conviction proceeding, such as habeas corpus, subject to two conditions." Id., doc. no. 48, p. 22. Judge Hall went over the limited situations in which Petitioner would be entitled to appeal, following which he asked Petitioner if he understood the appeal and collateral attack waiver as had just been explained to him. Id. Petitioner responded, "Yes." Id.

---

[1] In exchange for his guilty plea, as well as an agreement to pay $500,000.00 in restitution, the government agreed to dismiss the remaining counts in the superseding indictment. CR 109-171, doc. no. 35, p. 2.

2

Judge Hall also explained at the Rule 11 hearing that the maximum penalty for Petitioner's crime was a term of ten years of incarceration, along with a fine of not more than $250,000 and a term of supervised release not to exceed three years. Id. at 23. Moreover, Judge Hall explained the role of the sentencing guidelines, emphasizing that they were only advisory and not binding on him. Id. at 25. In addition, a government witness provided testimony as to the factual basis for the plea, the truth of which Petitioner confirmed. See id. at 14-19. Furthermore, in response to a question asked by Judge Hall, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 26. Similarly, Petitioner stated that no one had "forced . . . or pressured [him] to plead guilty . . . or made any promise to [him] to induce [him] to plead guilty other than the specific promises that are found in the plea agreement." Id. at 26. At the conclusion of the Rule 11 colloquy, Judge Hall accepted Petitioner's guilty plea. Id. at 26-27.

After the Rule 11 hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided for a base offense level of six, a 14-point enhancement because the offense resulted in a loss over $400,000.00, a two-point enhancement because the offense was committed through mass-marketing, and another two-point enhancement because Petitioner was a person in the business of receiving and selling stolen property, for a total offense level of 24. PSI ¶¶ 21-32. Petitioner was assigned a criminal history category of IV. Id. ¶ 40. Based on these factors, the PSI provided that Petitioner's guidelines range was 77 to 96 months of imprisonment. See id. ¶ 63.

Petitioner initially filed several objections to the PSI, but during the July 1, 2010 sentencing hearing, he opted to ask the Court to consider the issues raised in response to the

3

PSI in mitigation of his sentence rather than as formal objections. See id., doc. no. 49, pp. 4-5. Judge Hall sentenced Petitioner to serve an 88-month term of imprisonment and to pay $500,000 in restitution. Id., doc. no. 44. Consistent with his plea agreement, Petitioner did not appeal.

On June 30, 2011, Petitioner filed the instant § 2255 motion,[2] in which he raises the following two grounds for relief: (1) that his trial counsel provided ineffective assistance in that he induced Petitioner to plead guilty by advising him that it was not possible to return the stolen property; and (2) that his trial counsel provided ineffective assistance in that he failed to consult with Petitioner about filing a direct appeal. (Doc. no. 1, pp. 20-21.) Respondent contends that Petitioner's § 2255 motion should be dismissed because his trial counsel did not provide ineffective assistance of counsel, his guilty plea was knowing and voluntary, and his § 2255 claims are barred by the collateral attack waiver set forth in his plea agreement. (See doc. no. 3.) Petitioner disputes these contentions, arguing the collateral attack waiver should not bar his claims. (See doc. no. 5.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need For Evidentiary Hearing

In regard to Petitioner's request for an evidentiary hearing, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255

---

[2]Under Houston v. Lack, 487 U.S. 266, 276 (1988), Petitioner's motion is deemed filed on the date of delivery to prison officials for mailing. See also Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam) (§ 2255 motion deemed filed on date the petitioner "signed, executed, and delivered his petition to prison authorities for mailing"). The signature date on Petitioner's motion is June 30, 2011. (See doc. no.1, p. 13.)

4

proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing (doc. no. 1, pp. 8-9; doc. no. 5, p. 7) should be denied.

### B.  Petitioner's Guilty Plea Was Knowing and Voluntary

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea

5

may be involuntary in a constitutional sense:

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addresses each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall informed Petitioner in clear terms of the charge against him and the maximum statutory penalty that might be imposed in the event of Petitioner's conviction, and Petitioner testified that he understood the charge and the maximum penalty that might be imposed. CR 109-171, doc.

6

no. 48, p. 23. Judge Hall also provided a detailed explanation of the rights that Petitioner would forfeit by pleading guilty; Petitioner stated that he understood these rights and that his decision to plead guilty would result in a waiver of these rights. Id. at 23-25. In addition, Petitioner testified that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence, and that no one had forced, pressured, or induced him to plead guilty. Id. at 26.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and Petitioner fails to show otherwise with his assertion that he was not made aware of the possibility of returning some portion of the stolen diet capsules. See CR 109-171, doc. no. 48, p. 20. As the government persuasively argues, Petitioner's claim concerning his unawareness of the possibility of returning stolen property does not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea. (See doc. no. 3, p. 10.) Furthermore, Petitioner's bare allegation that he "would have taken his chances on being convicted by a jury" falls well short of establishing a reasonable probability that he would not have pleaded guilty and would have instead faced all 16 counts in the superseding indictment at trial if he had been aware of the option of seeking a restitution order that required him to give back the stolen goods. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

## C. Effect Of Collateral Attack Waiver In The Plea Agreement

### 1. Knowing And Voluntary Nature Of Waiver

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); Bushert, 997 F.2d at 1345.[3] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden in the instant case, then Petitioner's claim regarding his counsel's alleged failure to consult about filing a direct appeal is barred from review. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 109-171, doc. no. 35, pp. 7-8. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the collateral attack waiver provision. Id., doc. no. 48, p. 22. After Judge Hall concluded his review of the plea

---

[3]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).; see also Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365-67 (N.D. Ga. 2004).

8

agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id.

The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court [at a guilty plea hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, the Court concludes that the collateral attack waiver is valid and that Petitioner's claim in Ground Two – that his counsel failed to consult about filing a direct appeal – is barred by the waiver.

In making this determination, the Court is aware that Petitioner's claim in Ground Two asserts ineffective assistance of trial counsel. "An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id.

Although the Eleventh Circuit has not addressed the exact issue presented here, the rationale from Williams applies with respect to Petitioner's claim in Ground Two that his counsel was ineffective for failing to consult about filing an appeal. Because that claim does not relate to the validity of the guilty plea or the waiver in the plea agreement, it is barred by

9

the collateral attack waiver. See id.; United States v. Falcon-Sanchez, 416 F. App'x 728, 730 (10th Cir. 2011) (holding that ineffective assistance claim based on counsel's failure to file notice of appeal as instructed by petitioner was barred by collateral attack waiver because the claim "[did] not relate to the validity of the plea or the waiver"); see also United States v. Morgan, 284 F. App'x 79, 83, 87 (4th Cir. 2008) (holding that ineffective assistance claim based on counsel's failure to file appeal was barred by collateral attack waiver); Skaggs v. United States, 104 F. App'x 462, 463 (6th Cir. 2004) (same); but see United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007) (holding that ineffective assistance claim based on counsel's failure to file appeal was not barred by appeal and collateral attack waiver).

Additionally, as Respondent points out (see doc. no. 3, p. 15), the determination that Petitioner's claim in Ground Two is barred by the collateral attack waiver does not run afoul of the decision in United States v. Gomez-Diaz, 433 F.3d 788 (11th Cir. 2005). In that case, the Eleventh Circuit held that a § 2255 petitioner who had entered into a valid appeal waiver did not have to show a meritorious ground for appeal in order to prevail on a claim that his counsel was ineffective for failing to file a notice of appeal when instructed to do so. Id. at 793-94. In contrast to the issue addressed in Gomez-Diaz, the determinative question in the instant case is whether, assuming the truth of Petitioner's allegation that his counsel improperly failed to consult about an appeal, Petitioner is nevertheless barred from raising a claim of ineffective assistance of counsel by a valid waiver of his right to collaterally attack his sentence.

In other words, the Gomez-Diaz decision focused on the waiver of the petitioner's right to file a *direct appeal* – in particular, whether the existence of a *direct appeal* waiver precluded an ineffective assistance of counsel claim absent a showing of a meritorious

10

ground for appeal. See id. The focus of the instant case is the *collateral attack* waiver. That waiver represents a forfeiture of the right to collaterally attack any error – even a "blatant error" such as counsel's failure to consult about a direct appeal – that does not fall within the previously discussed exception from Williams, *supra*. See United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (reasoning that a waiver of the right to pursue an appeal or collateral attack "includes a waiver of the right to appeal [or collaterally attack] blatant error"). Therefore, following the rationale of Williams, the Court concludes that enforcement of the collateral attack waiver in the instant case does not contradict the Eleventh Circuit's holding in Gomez-Diaz.[4]

### 2. Ineffective Assistance of Counsel Claim in Ground One Not Barred By Waiver, but Lacks Merit

Notwithstanding the analysis above, Petitioner's claim in Ground One that his counsel provided ineffective assistance in that he "induced" Petitioner to plead guilty by advising him that it was not possible to return the stolen property is not precluded by his appeal waiver, as "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F.Supp.2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he

---

[4]Of note, in reaching its decision in Gomez-Diaz, the Eleventh Circuit announced that its opinion was in accord with the Tenth Circuit's treatment of the same issue in United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005). The Tenth Circuit later clarified its decision in Garrett in addressing the issue presented in the instant case, and proceeded to hold that claims of ineffective assistance of counsel premised on counsel's failure to file a notice of appeal are barred by a valid collateral attack waiver. Falcon-Sanchez, 416 F. App'x at 730-31. Thus, the Tenth Circuit's case law concerning these issues further illustrates that the Court's determination in the instant case is in harmony with the Eleventh Circuit's decision in Gomez-Diaz.

11

alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As Petitioner's claim in Ground One purports to challenge his counsel's performance as it relates to the validity of his plea or waiver (inasmuch as he alleges that his counsel "induced" him to plead guilty by failing to advise him of the option of returning the stolen property (doc. no. 1, p. 20)), Petitioner's claim is not barred by the provision in the plea agreement waiving his appeal rights.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the

defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, for the reasons explained above, Petitioner's claim that his counsel did not advise him about returning the stolen property fails to establish that his guilty plea was not

13

entered into knowingly and voluntarily. See supra Part II.B. Moreover, Petitioner has not shown that his counsel's performance was objectively unreasonable. Petitioner's claim relies upon the portion of the federal statute governing restitution orders that provides that, in crafting such an order, the sentencing court "may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A) (emphasis added). If a court elects to order an in-kind payment, such payment "may be in the form of . . . return of property." Id. § 3664(f)(4)(A) (emphasis added). However, the decision of what type of restitution to order is committed to the sentencing court's discretion, and the payment of an amount equal to the value of the victim's loss is appropriate when return of the property is impossible, impracticable, or inadequate. See United States v. Robertson, 493 F.3d 1322, 1332 (11th Cir. 2007) (citing 18 U.S.C. § 3663A(b)(1)). As Respondent argues, it was reasonable for Petitioner's counsel to conclude that the return of the stolen diet pills was not a viable option, especially given concerns over contamination of the pills. (See doc. no. 3, p. 7.) Accordingly, Petitioner's counsel did not provide objectively unreasonable representation by failing to discuss the possibility of making restitution by returning the stolen property.

Furthermore, Petitioner has failed to show that the outcome of the proceeding would have been different if his counsel had discussed the possibility of returning the stolen property. The Court agrees with Respondent (see doc. no. 3, p. 7) that Petitioner's crime was complete the moment he sold, possessed, or received the stolen diet pills, and the return of the property would neither have provided him with a defense to the charge nor reduced the amount of the loss attributable to his conduct. See U.S.S.G. § 2B1.1, application note 3(A)

(providing that loss is defined as the greater of "actual loss" and "intended loss," the latter of which is defined as "the pecuniary harm that was intended to result from the offense"). Additionally, as explained previously, even if Petitioner's counsel had discussed with him the possibility of returning the stolen goods and the issue had been raised, it would not likely have led to a different result given the impracticability of returning stolen diet pills. See Robertson, 493 F.3d at 1332. Therefore, Petitioner has failed satisfy the prejudice prong of the Strickland standard because he has not shown a reasonable probability of a different outcome absent his counsel's purportedly ineffective assistance. Hill, 474 U.S. at 59. Thus, Petitioner is not entitled to relief on his claim that his counsel provided ineffective assistance by failing to discuss with him the possibility of giving back the stolen goods.

In sum, Petitioner is not entitled to relief on either of the claims asserted in his § 2255 motion. Respondent's motion to dismiss the § 2255 motion in its entirety should therefore be granted.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 3), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 19th day of October, 2011, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15