IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JEREMY ALFONZIE JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-102 |
| | ) | (Formerly CR 109-171) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Jeremy Alfonzie Jones, an inmate incarcerated at the Federal Correctional Institution in Edgefield, South Carolina, filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. United States District Judge J. Randal Hall originally dismissed Petitioner's motion without an evidentiary hearing. However, the Eleventh Circuit Court of Appeals remanded the case with direction to hold an evidentiary hearing on Petitioner's ineffective assistance argument based on the claim that trial counsel failed to consult about filing a direct appeal. The Court appointed attorney Joshua Campbell to represent Petitioner, held a hearing on February 26, 2015, and now **REPORTS** and **RECOMMENDS** this sole remaining § 2255 claim be **DENIED** and that this civil action be **CLOSED**.

**I.  BACKGROUND**

Judge Hall dismissed Petitioner's motion without an evidentiary hearing but also granted a Certificate of Appealability ("COA") as to one issue: "whether Petitioner's collateral attack waiver bars his § 2255 claim that his trial counsel provided ineffective assistance of counsel by failing to consult about filing a direct appeal." (Doc. no. 9, p. 5.) Because the government

withdrew its reliance on the collateral attack waiver while the case was on appeal, based on a new policy by the United States Department of Justice regarding enforcement of appeal waivers, the Eleventh Circuit ruled that Petitioner was entitled to an evidentiary hearing concerning the issue identified in the COA. The only other issue raised in the § 2255 motion, an ineffective assistance claim based on the assertion Petitioner was induced to plead guilty by bad advice from counsel about the possibility of returning stolen property, was decided adversely to Petitioner on the merits. (Doc. nos. 6, 9.) That issue was not part of the COA, and therefore the conclusion Petitioner is not entitled to relief on that claim will not be revisited.

### A. Indictment

In a sixteen-count superseding indictment filed on November 3, 2009, a grand jury in the Southern District of Georgia charged Petitioner with various federal crimes, including receipt and sale of stolen property, mail fraud, introducing a misbranded drug into interstate commerce, and introducing an adulterated drug into interstate commerce. United States v. Jones, CR 109-171, doc. no. 15 (S.D. Ga. Nov. 3, 2009) (hereinafter "CR 109-171"). The charges carried the possibility of a lengthy sentence of imprisonment: not more than ten years for the sale of stolen property charge, not more than twenty years for each of the five charges of mail fraud, and not more than three years for each of the ten charges of introduction of misbranded and adulterated drugs. Id., doc. no. 16. The Court appointed attorney Gary A. Glover under the Criminal Justice Act to represent Petitioner. Id., doc. no. 28.

### B. Agreement to Plead Guilty

Pursuant to a written plea agreement, Petitioner pleaded guilty on March 5, 2010, to Count One of the superseding indictment, which charged that, while employed at GlaxoSmithKline in Aiken, South Carolina, he received and sold stolen property consisting of

2

approximately 1,150,000 of Alli® weight loss capsules valued at $5,000.00 or more, in violation of 18 U.S.C. § 2315. Id., doc. nos. 35, 36. Petitioner specifically agreed that the total monetary loss to the GlaxoSmithKline was $500,000.00 and that he would make restitution of this sum. Id., doc. no. 35, p. 5. Petitioner further agreed to provide his full and complete cooperation with law enforcement authorities, which may include "the disclosure and relinquishment of any documents or physical items of evidentiary value in the Defendant's possession or held for the Defendant by others," as well as promptly turning over or disclosing the location of any evidence relevant to the case. Id., doc. no. 35, pp. 2, 4. In exchange, the government agreed, among other things, to dismiss the remaining fifteen charges in the superseding indictment. Id., doc. no. 35, p. 2.

Petitioner's plea agreement also contained a broad appeal and collateral attack waiver provision that stated in relevant part:

> [T]he defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Id., doc. no. 35, p. 8. By signing the plea agreement Petitioner attested that he read and understood the plea agreement, that the agreement accurately and correctly stated the representations made to him by his attorney and representatives of the government, and that the document accurately set forth the terms and conditions of his agreement with the government that Mr. Glover negotiated with the permission of Petitioner and on his behalf. Id. at 11.

Specifically, Petitioner attested that he read the Plea Agreement, "and I understand what it says and means." Id.

At the guilty plea hearing, Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id., doc. no. 48 ("Rule 11 Tr."), pp. 9-12. Special Agent Gerald Dunham with the Food and Drug Administration, Office of Criminal Investigations, provided testimony as to the factual basis for the plea, the truth of which Petitioner confirmed. See id. at 14-19. SA Dunham testified that approximately 1.3 to 1.5 million diet pills had been stolen and were valued at approximately $500,000.00. Id. at 19.

Judge Hall summarized the terms of the plea agreement and explained to Petitioner that he was "waiving the right to appeal either directly or indirectly [his] conviction and sentence including any right to attack that sentence in a post-conviction proceeding, such as habeas corpus, subject to two conditions." Id. at 22. Judge Hall went over the limited situations in which Petitioner would be entitled to appeal, following which he asked Petitioner if he understood the appeal and collateral attack waiver as had just been explained to him. Id. Petitioner responded, "Yes." Id.

Judge Hall also explained at the guilty plea hearing that the maximum penalty for the charge to which Petitioner was pleading guilty is a term of ten years of incarceration, along with a fine of not more than $250,000 and a term of supervised release not to exceed three years. Id. at 23. Moreover, Judge Hall explained the role of the sentencing guidelines, emphasizing that they were only advisory and not binding on him. Id. at 25. Furthermore, in response to a

4

question asked by Judge Hall, Petitioner averred that no one had made him any promise, prediction, or prophesy that he would receive a particular sentence. Id. at 26.

Similarly, Petitioner stated that no one had "forced . . . or pressured [him] to plead guilty . . . or made any promise to [him] to induce [him] to plead guilty other than the specific promises that are found in the plea agreement." Id. at 26. Petitioner also affirmed his understanding that by signing the plea agreement, he agreed "to be bound by all of its terms and, further, that [he] agreed that all of the facts that are recited in that agreement are true and correct." Id. at 20-21. At the conclusion of this colloquy with Petitioner, Judge Hall accepted Petitioner's guilty plea. Id. at 26-27.

### C. Sentencing

The United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided for a base offense level of six, a fourteen-point enhancement because the offense resulted in a loss over $400,000.00, a two-point enhancement because the offense was committed through mass-marketing, and another two-point enhancement because Petitioner was a person in the business of receiving and selling stolen property, for a total offense level of twenty-four. PSI ¶¶ 21-32. The PSI assigned Petitioner a criminal history category of IV. Id. ¶ 40. Based on these factors, the PSI provided that Petitioner's guidelines range was seventy-seven to ninety-six months of imprisonment. See id. ¶ 63.

Petitioner initially filed several objections to the PSI, but during the July 1, 2010 sentencing hearing, he opted to ask the Court to consider the issues raised in response to the PSI in mitigation of his sentence rather than as formal objections. CR 109-171, doc. no. 49 ("Sent. Tr."), pp. 4-5. Judge Hall sentenced Petitioner to serve an eighty-eight-month term of imprisonment and to pay $500,000 in restitution. Id., doc. no. 44. At the conclusion of

5

sentencing, Judge Hall reminded Petitioner of the appellate rights he had waived with the entry of his guilty plea. Sent. Tr., p. 25. Consistent with his plea agreement, Petitioner did not appeal.

### D. § 2255 Proceedings

Petitioner, however, did file the instant § 2255 motion, raising two grounds for relief: (1) trial counsel provided ineffective assistance in that he induced Petitioner to plead guilty by advising him that it was not possible to return the stolen property; and (2) trial counsel provided ineffective assistance in that he failed to consult with Petitioner about filing a direct appeal. (Doc. no. 1, pp. 20-21.) The government moved to dismiss the § 2255 motion, arguing trial counsel did not provide ineffective assistance, Petitioner's guilty plea was knowing and voluntary, and his § 2255 claims were barred by the collateral attack waiver set forth in his plea agreement. (See doc. no. 3.) As explained above, Judge Hall dismissed the § 2255 motion, but the Eleventh Circuit remanded the case for a hearing on the claim regarding the failure to consult about an appeal because the government withdrew its reliance on the collateral attack waiver in the plea agreement. The Court held that hearing on February 26, 2015, and heard testimony from Petitioner and Mr. Glover.

#### 1. Testimony of Petitioner

Although Petitioner's written § 2255 motion filed in 2011 asserted "that counsel was ineffective for failing to consult about an appeal," Petitioner changed his position by 2015 and started his testimony with the assertion he had instructed Mr. Glover to file an appeal on his behalf. Court's recording system, *For the Record* (FTR) 2:11.48-:12.00. Petitioner testified that immediately after sentencing, he expressed to Mr. Glover his opinion that the sentence of eighty-eight months was "kind of harsh" even though it was within the guidelines range of seventy-seven to ninety-six months, raised the issue about the possibility of returning stolen diet pills still

in his possession, and specifically asked Mr. Glover to file an appeal. FTR 2:18.04-.40; 2:56.07-.14; 2:58.40-.56. Petitioner maintains both that he attempted to engage Mr. Glover in a discussion about filing an appeal, and that Mr. Glover never discussed the topic of filing an appeal. FTR 2:20.38-.43; 2:59.00-.10.

When questioned by the government, Petitioner first testified his § 2255 motion had "clearly" alleged that he instructed Mr. Glover to file an appeal in the portion of his sworn affidavit stating he "mentioned" to Mr. Glover immediately after sentencing that a term of eighty-eight months was harsh for a first federal offense. FTR 2:32.34-:35.30; 2:35.50-.59; doc. no. 1, Aff. ¶ 10. He asserts that he asked for an appeal even though he "absolutely" knew that according to the terms of his plea agreement, because he was sentenced within the guidelines range, he had waived his right to an appeal. FTR 2:35.00-.10.

However, as the cross-examination progressed, Petitioner changed his position. Petitioner testified that he did not ask Mr. Glover to file an appeal because he "did not want to be out of order," and he waited until the "appropriate time" to raise the issue in his § 2255 motion. FTR 2:45.21-:46.12. Petitioner conceded on cross-examination that he never instructed Mr. Glover to file an appeal or even expressed any interest in appealing. Instead, he merely told Mr. Glover that he thought the sentence was "kind of harsh." FTR 2:32.59-:34.16. This, according to Petitioner, is the same thing as telling Mr. Glover to file an appeal. FTR 2:34.17-:35.00.

Petitioner thought his sentence was harsh because he believes that if Mr. Glover had not advised against it, there would have been a discussion with authorities about returning the stolen product still in his possession prior to the plea agreement and preparation of the PSI. Even though the prosecutor is responsible for negotiating plea agreements, GlaxoSmithKline would have negotiated a more favorable plea agreement because it wanted the stolen pills returned.

7

FTR 2:40.00-:41.16. Moreover, the formulation of the loss calculation would have been different, and the PSI would not have set the same guidelines range for sentencing. FTR 2:43.19-:44.25. Petitioner believes his guidelines range would have been lower despite his acknowledged criminal history of "simple battery, obstruction, speeding, theft of a car, [and] grand larceny" that preceded this federal conviction. FTR 2:29.50-:30.18; Sent. Tr., pp. 15-18.

Petitioner wanted to file an appeal not only because he felt the sentence was harsh, but also because "everything in the case would have turned out differently" if Mr. Glover had simply agreed with Petitioner's plan to return the stolen pills still in his possession. FTR 2:35.33-:36.26; 2:41.31-.34; 2:44.42-:45.05. He maintains that the Food and Drug Administration, as well as GlaxoSmithKline, were interested in having the pills returned, and the only reason he had not returned the pills was because Mr. Glover told him not to do so. FTR 2:38.12-:39.32. In fact, Petitioner testified that he knows where the pills are today and could return them, and even though he claims Mr. Glover provided ineffective assistance by telling him not to return the pills, he still has not shared this location information with any officials because Mr. Glover told him approximately five years ago not to do so. Id. In sum, it is entirely Mr. Glover's fault that Petitioner has never returned the stolen pills still in his possession, despite the obligation to do so under the plea agreement.

Likewise, Petitioner concedes he had the opportunity to address Judge Hall at sentencing but never offered any objections to the PSI, even though the PSI, like the plea agreement, contained the $500,000 loss calculation Petitioner now challenges and pointed out that Petitioner had not disclosed the location of the stolen pills. Sent. Tr., p. 5; PSI ¶¶ 13, 14. Although Petitioner told Judge Hall at sentencing that he "really took [his] time to look at" the PSI, he now asserts he never raised objections to the PSI because he only read it "closely, but not

thoroughly." FTR 2:30.45-:32.00. Again, Petitioner asks this Court to disregard his sworn affirmations before Judge Hall, but believe that all of the self-serving affirmations made under oath at the February 26th evidentiary hearing are true and correct.

### 2. Testimony of Mr. Glover

Mr. Glover testified that his representation of Petitioner followed a "normal" course that included meeting with Petitioner several times to go over the case, meeting with FDA agents, going to court to enter a guilty plea, and reviewing the PSI prior to sentencing. FTR 3:05.27-:06.08. Petitioner never complained to Mr. Glover about any actions taken, or not taken, during the course of the representation, and Petitioner "seemed to be satisfied" with the outcome of the case. FTR 3:05.50-.59; 3:10.10-.16. In particular, Petitioner never asked about filing an appeal and never expressed any dissatisfaction with the sentence. FTR 3:10.35-.46; 3:11.11-.18. Mr. Glover readily acknowledges that after sentencing he never discussed filing an appeal with Petitioner. FTR 3:53.10-.49.

That the issue of an appeal never came up did not surprise Mr. Glover because he and Petitioner had gone over the PSI thoroughly prior to sentencing, and he had explained to Petitioner the sentencing guidelines range and that Petitioner's sentence was likely to fall within the seventy-seven to ninety-six month range in the PSI. FTR 3:10.20-:11.08. Indeed, Mr. Glover "felt good" about the sentencing outcome because just weeks prior to appearing before Judge Hall and while on federal bond, Petitioner had been involved in a multi-county, high-speed chase that resulted in charges filed against Petitioner in Taliaferro County for possession of a stolen vehicle, concealing the identity of a vehicle, reckless driving, fleeing to elude, and speeding. FTR 3:11.35-:14.25; PSI ¶ 42. Mr. Glover worked out an agreement with the Assistant District Attorney prosecuting the Taliaferro County charges that those charges would

9

be dismissed upon Petitioner's federal sentencing. FTR 3:13.10-:13.30; 3:13.45-:14.08. After Judge Hall sentence Petitioner, Mr. Glover immediately complied and forwarded the necessary paperwork that resulted in the dismissal of the Taliaferro County charges. FTR 3:13.30-:14.25. Mr. Glover consistently testified that Petitioner never conveyed he thought his eighty-eight month sentence was harsh. FTR 3:10.41-.45; 3:14.35-.38.

As to the issue of returning the stolen diet pills, Mr. Glover repeatedly testified that he had advised Petitioner on several occasions to return the pills. FTR 3:06.58-:07.12; 3:08.20-.28; 3:08.50-:09.12-.26; 3:22.18-.38. Mr. Glover felt it was important to turn over the pills not only to put him in the best possible light with Judge Hall, but also because it was a requirement of the cooperation provisions in the plea agreement. FTR 3:08.24-.47. Mr. Glover advised Petitioner in person to turn over the stolen pills, but when Petitioner repeatedly denied that he had the pills, Mr. Glover quit bringing up the issue because return of the pills seemed impossible. FTR 3:06.58-:07.12; 3:08.24-.30; 3:09.07-.30; 3:44.40-.57. Petitioner never asked to return the stolen pills. FTR 3:09.32-.39; 3:15.46-:16.09. Relying on his case time billing records to recall his discussions with SA Dunham about returning the stolen pills, Mr. Glover testified that even when the agent asked where the pills were and if they could be returned, after entry of the guilty plea and when the cooperation provisions of that agreement were in force, Petitioner said he did not know where the pills were. FTR 3:06.03-:08.30; 3:40.00-:44.57; 3:57.00-:58.46.

## II. DISCUSSION

### A. Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500,

505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (holding that Strickland test applies to ineffective assistance claim alleging failure to file an appeal). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial.

Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)). A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Commissioner, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).

Under the prejudice prong of Strickland, a petitioner must show "that there 'is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brooks, 719 F.3d at 1300 (quoting Strickland, 466 U.S. at 694). As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Secretary, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 484 (2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. Hill, 474 U.S. at 56-59.

Petitioner argues in his motion that Mr. Glover provided ineffective assistance because he did not consult with him about filing an appeal. At the evidentiary hearing, Petitioner also tried

to argue that he had instructed counsel to file an appeal by stating he thought the eighty-eight month sentence was harsh. Mr. Glover acknowledges that he did not consult with Petitioner about filing an appeal, but he steadfastly maintains that Petitioner never expressed any dissatisfaction with his sentence and never instructed him to file an appeal.

### B. Petitioner Did Not Ask Counsel to File an Appeal.

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule. "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Flores-Ortega, 528 U.S. at 477-78 (holding that it is professionally unreasonable for an attorney to fail to follow a defendant's express instructions with respect to an appeal). Thus, if the Court determines that Mr. Glover failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

The threshold issue relates to credibility. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing that credibility determinations are within the province of the factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing a court's opportunity to observe and study witnesses to make credibility determination concerning testimony on ineffective assistance claim). In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the

[witness's] testimony, or his candor or demeanor on the stand." Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Mr. Glover over Petitioner. First, Mr. Glover's testimony was consistent and remained so during cross-examination. He never vacillated in his descriptions of conversations with Petitioner and of the actions taken during the course of his representation of Petitioner. Second, Mr. Glover's testimony was internally consistent and logically sound. Mr. Glover recounted his representation of Petitioner in a detailed and methodical manner, referring to his records and cross-referencing dates when necessary to present a clear timeline of events.

Nor did Mr. Glover waver when explaining a lack of documentary evidence with respect to certain conversations he had during the course of his representation. Mr. Glover readily acknowledged that he had not consulted with Petitioner about filing an appeal, the very basis for the ineffectiveness claim under consideration by the Court. This acknowledgment is all the more credible in light of his testimony that Petitioner never brought up an appeal after sentencing and was satisfied with the outcome because Mr. Glover had (1) prepared him for expecting a sentence within the guidelines range; (2) worked to broker a deal with Taliaferro County officials to dismiss charges garnered while Petitioner had been on a federal bond; and (3) secured a plea agreement resulting in the dismissal of all but one of sixteen counts charged in the superseding indictment. Petitioner never complained during the course of the case about any actions taken or not taken by Mr. Glover, and after sentencing, Petitioner seemed satisfied with an outcome within the expected range of sentencing. After so much quality work on Petitioner's case, the notion that Mr. Glover would ignore a specific request to file a notice of appeal on Petitioner's

behalf – which would have taken a matter of minutes – and then lie to the Court about this circumstance is not credible.

In contrast with the unwavering testimony of Mr. Glover, Petitioner's self-serving testimony is unbelievable. First, Petitioner originally couched his ineffectiveness claim as a failure to consult about filing an appeal, but then he asserted he had actually instructed Mr. Glover to file an appeal. However, Petitioner could not settle on when he had instructed him to file an appeal. Second, his assertion that he instructed Mr. Glover to file an appeal is inconsistent with his assertion that he "absolutely" knew he had waived his right to an appeal under the terms of the plea agreement. Third, Petitioner conceded on cross-examination that he never actually told Mr. Glover to file an appeal, but instead merely said the sentence was "kind of harsh."

In light of these considerations, the Court finds that Petitioner never instructed Mr. Glover to file an appeal.

### C. Counsel Had No Duty to Consult Regarding an Appeal.

Even though the Court finds that Mr. Glover was not instructed to file an appeal on Petitioner's behalf, the inquiry does not end there. Indeed, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so. Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480). With respect to the instant motion, it is undisputed Mr. Glover did not consult with Petitioner about an appeal after his sentencing. The determinative question, therefore, is whether there was a duty to consult under the circumstances.

"Counsel generally has a duty to consult with the defendant about an appeal." Id. at 1206 (citing Flores-Ortega, 528 U.S. at 481). However, the Supreme Court specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480; see also Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal."). Rather, taking into consideration the totality of the circumstances,

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Flores-Ortega, 528 U.S. at 480. Furthermore, the Supreme Court provided the following guidance as to the circumstances that factor into the determination of whether counsel has a duty to consult with a defendant about an appeal:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id.

The Court concludes that Mr. Glover did not have a duty to consult with Petitioner about an appeal. Indeed, each of the factors discussed in Flores-Ortega that weigh against finding a duty to consult are present in this case. Petitioner's conviction followed a guilty plea. Petitioner entered his plea pursuant to a plea agreement, and he received the sentence bargained for and

agreed upon in that plea agreement. Additionally, in his plea agreement, Petitioner waived the right to appeal his sentence so long as he received the agreed-upon sentence below the statutory maximum and within the guidelines range, which he did. Thus, the scope of appealable issues was extremely narrow.

Moreover, Petitioner has not identified any nonfrivolous grounds for appeal. When asked at the evidentiary hearing, Petitioner stated he wanted to file an appeal not only because he felt his sentence was kind of harsh, but also because "everything in the case would have turned out differently" if he had rejected Mr. Glover's advice and returned the stolen pills still in his possession. However, Petitioner's eighty-eight month sentence fell well below the statutory maximum and well within the seventy-seven to ninety-six month sentencing guidelines range. Also, Petitioner's explanation for not turning over the stolen pills is illogical in light of his acknowledgment that (1) he knows where the pills are even today; (2) he knows that the terms of his plea agreement require him to provide this information to law enforcement officers; and (3) when given the opportunity to address Judge Hall, he never mentioned that he wanted to disclose the location of the pills but was instructed not to do so. Indeed, given the contrast between Petitioner's sworn testimony at the evidentiary hearing versus his sworn testimony at the guilty plea proceedings and sentencing before Judge Hall, the only apparent explanation is that Petitioner changes his story to whatever serves his present interest.

Furthermore, return of the stolen pills would not have decreased the guidelines calculation related to loss amount. Petitioner's crime was complete the moment he sold, possessed, or received the stolen diet pills, and the return of the property would neither have provided him with a defense to the charge nor reduced the amount of the loss attributable to his conduct. See U.S.S.G. § 2B1.1, application note 3(A) (providing that loss is defined as the

17

greater of "actual loss" and "intended loss," the latter of which is defined as "the pecuniary harm that was intended to result from the offense").

Likwise, Petitioner's reliance on 18 U.S.C. § 3664(f)(3)(A) and its reference to returning property as part of restitution as grounds for a nonfrivolous appeal is misplaced because the decision of what type of restitution to order is committed to the sentencing court's discretion. See United States v. Robertson, 493 F.3d 1322, 1333 (11th Cir. 2007). The payment of an amount equal to the value of the GlaxoSmithKline's loss is appropriate when return of the property is impossible, impracticable, or inadequate. See id. at 1332 (citing 18 U.S.C. § 3663A(b)(1)). Even if Petitioner had returned the stolen pills, they are undoubtedly worthless to GlaxoSmithKline for sale once they have left its regulated confines. See Robertson, 493 F.3d at 1332. To the extent Petitioner referenced at the evidentiary hearing the lack of expert testimony about whether the stolen pills could have been returned to GlaxoSmithKline, the issue is a red herring. As Mr. Glover explained, Petitioner denied having or being able to return the stolen pills, so there would have been no reason to seek expert testimony on the subject.

Accordingly, the Court finds that there was no reason for Mr. Glover to think that a rational defendant would want to appeal. Likewise, based on the credible evidence of record, Petitioner had not reasonably demonstrated to counsel that he was interested in appealing. Therefore, Mr. Glover had no duty to consult with Petitioner about an appeal. See Devine v. United States, 520 F.3d 1286, 1288-89 (11th Cir. 2008) (affirming district court's finding that counsel had no duty to consult about appeal because the defendant pled guilty based on a plea agreement with an appeal waiver, sentence fell within guidelines range, no non-frivolous grounds for appeal had been shown, and defendant had not reasonably demonstrated an interest in appealing); Otero, 499 F.3d at 1271 ("Because no rational defendant in [the petitioner's]

position would have sought to appeal in light of the broad appeal waiver, and because [the petitioner] did not communicate to his lawyer a desire to appeal, we conclude that [the petitioner's] lawyer was not under a constitutional obligation to consult [the petitioner] about an appeal.").

In sum, the Court finds Petitioner has not established that Mr. Glover's representation fell below an objective standard of reasonableness because the credible evidence shows Petitioner did not instruct Mr. Glover to file an appeal, and Mr. Glover had no duty to consult about filing an appeal. Moreover, Petitioner has not proved "serious derelictions" in Mr. Glover's advice regarding the plea such that Petitioner would have insisted on going to trial or that there is any merit to the issues he now claims to want to raise on appeal related to a harsh sentence or the return of stolen property. Accordingly, Petitioner is not entitled to relief.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** as it relates to Petitioner's ineffective assistance claim remanded from the Eleventh Circuit Court of Appeals. Moreover, as Judge Hall previously determined Petitioner was not entitled to relief on the ineffective assistance claim raised in ground one of his motion, (doc. nos. 6, 9), no other issues remain, and the Court therefore **REPORTS** and **RECOMMENDS** this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 20th day of March, 2015, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA